EDWIN A. LOMBARD, Judge.
 

 |! Sergeant Ray Byrd, an employee of the Department of Police for the City of New Orleans (“NOPD”), appeals from a decision of the Civil Service Commission (the “Commission”), denying his appeal. For the following reasons, we reverse the decision of the Commission.
 

 Relevant Facts
 

 Sgt. Byrd is a police officer with the NOPD. In October 2006, Sgt. Byrd, Sgt. Scott Monaco, and Sgt. Steven Andry were the three supervising sergeants in the Fourth District’s Platoon B. One of the
 
 *973
 
 duties of a supervising sergeant is reviewing and logging in all reports from the previous day. On October 21, 2006, Officer Nikia Adams, an officer in Platoon B, investigated a traffic accident and was assigned to file accident report number J-22546-06. Apparently, Off. Adams failed to turn in a final investigative report, and the report had to be reconstructed a year later.
 

 The NOPD subsequently enforced disciplinary action against Sgt. Byrd for failing to follow up on Off. Adam’s accident report. Sgt. Byrd was given a letter of 12reprimand, which provided that the NOPD had determined that on October 21, 2006, Off. Adams was under Sgt. Byrd’s direct supervision, that Off. Adams was assigned an auto accident report, that on October 22, 2006, Sgt. Byrd’s duties included reviewing and logging in all reports from the previous day, and that Sgt. Byrd failed to ensure that the accident report was completed and turned in to a supervisor. The letter further alleged that Sgt. Byrd’s inaction violated Rule 4.2, Instructions from an Authoritative Source, to wit: Chapter 82.2 relative to Processing Police Reports.
 
 [1]
 

 Sergeant Byrd appealed the letter of reprimand to the City Civil Service Commission and a hearing was held on his appeal April 8, 2008. At the hearing, the NOPD presented the testimony of Sgt. Albert Miller, a superasing sergeant in the Fourth District’s Platoon A who investigated the matter on NOPD’s behalf. Sgt. Miller testified that he reviewed the report log and noted that Sgt. Byrd initially logged in the report on October 22, 2006. He therefore surmised that it was Sgt. Byrd’s responsibility to make sure the report was turned in timely. Sgt. Miller further testified that, in his platoon, Platoon A, the sergeant who logs in the reports for a particular day is the one responsible for following up to make sure that any corrections that are required are completed, although he admitted that he |swas not aware of Platoon B’s protocol regarding which sergeant is required to follow up on reports, since different platoons can have different policies.
 

 Sgt. Byrd testified on his own behalf at the hearing. It was his testimony that, unlike Platoon A, Platoon B had no policy regarding who followed up to ensure that the reports prepared by officers were turned in timely. He noted that sometime after this incident, Platoon B implemented a policy regarding the responsibilities of the sergeants in the platoon, but that prior to the implementation of the policy, the responsibility of insuring the reports were timely turned in was shared by the three sergeants and the lieutenant. Sgt. Byrd averred that although all three sergeants were investigated with regard to this incident, neither of the other sergeants received a letter of reprimand after the investigation.
 

 After reviewing the testimony and evidence, the Commission concluded that “Police Department policy required Appellant [Sgt. Byrd] as Officer Adams’ supervisor to review the next day (October 22, 2006) any incomplete reports submitted the previous day. Upon discovering an incomplete report, Appellant [Sgt. Byrd] had the
 
 *974
 
 responsibility for insuring that the reporting officer get an extension to complete and file the report on a timely basis. Appellant failed to do this.” Accordingly, the Commission denied Sgt. Byrd’s appeal and Sgt. Byrd subsequently appealed to this Court.
 

 Assignments of Error
 

 Sgt. Byrd argues the Civil Service Commission acted arbitrarily and capriciously in denying appellant’s appeal:
 

 )41) by not considering the department’s lack of investigation regarding appellant’s responsibilities;
 

 2) by upholding the department’s disciplining of only one supervising sergeant; and
 

 3) by finding the discipline imposed is commensurate with the alleged violation.
 

 Standard of Review
 

 The appointing authority, here, the NOPD, is charged with the operation of his or her department and it is within his or her discretion to discipline an employee for sufficient cause.
 
 Joseph v. Department of Health,
 
 389 So.2d 739, 741 (La.App. 4 Cir.1980);
 
 Branighan v. Department of Police,
 
 362 So.2d 1221, 1223 (La.App. 4 Cir.1978). Sufficient cause ex ists whenever an employee’s conduct impairs the efficiency of the public service in which the employee is engaged.
 
 Cittadino v. Department of Police,
 
 558 So.2d 1311 (La.App. 4th Cir.1990). The appointing authority has the burden of proving, by a preponderance of the evidence, that the complained-of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority.
 
 Cure v. Dept. of Police,
 
 07-0166, p. 2 (La.App. 4 Cir. 8/1/07), 964 So.2d 1093, 1094 (citing
 
 Marziale v. Dept. of Police,
 
 06-0459, p. 10 (La.App. 4 Cir. 11/8/06), 944 So.2d 760, 767).
 

 The Civil Service Commission has the authority to hear and decide disciplinary cases, which includes the authority to modify (reduce) as well as to reverse or affirm a penalty. La. Const, art. X, § 12;
 
 Branighan v. Department of Police,
 
 362 So.2d 1221, 1223 (La.App. 4 Cir.1978). The decision of the Commission is subject to review on any question of law or fact upon appeal to this |sCourt, which reviews findings of fact using the manifestly erroneous/clearly wrong standard of review. La. Const, art. X, § 12;
 
 Cure,
 
 07-0166, p. 2, 964 So.2d at 1094. Thus, in determining whether the disciplinary action was based on good cause and whether the punishment is commensurate with the infraction, we should not modify the Commission’s order unless it was arbitrary, capricious, or characterized by an abuse of discretion.
 
 Id.
 
 A decision of the Commission is “arbitrary and capricious” if there is no rational basis for the action taken by the Commission.
 
 Cure,
 
 07-0166, p. 2, 964 So.2d at 1095.
 

 Discussion
 

 On appeal, Sgt. Byrd argues the Commission acted arbitrarily in denying his appeal without considering the Department’s lack of investigation regarding his responsibilities. In support of this argument, Sgt. Byrd cites
 
 Marsellus v. Dept. of Public Safety and Corrections.,
 
 04-0860 (La.App. 1 Cir. 9/23/05), 923 So.2d 656, wherein the First Circuit Court of Appeal noted that “[a]n administrative agency’s conclusion is “capricious” when it has no substantial evidence to support it.”
 
 Id.
 
 at p. 8, 923 So.2d at 661.
 

 In response, the NOPD argues that the decision of the Commission was not arbitrary and capricious because NOPD had cause for the disciplinary action it imposed on Sgt. Byrd. NOPD cites
 
 Whitaker v. New Orleans Police Dept.,
 
 03-0512, p. 6
 
 *975
 
 (La.App. 4 Cir. 9/17/03), 863 So.2d 572, 576, for the proposition that “the Commission should give heightened regard to the appointing authorities that serve as special guardians of the public safety and operate as quasi-military institutions where strict discipline is imperative.”
 

 | fiThere is certainly a lack of substantial evidence to support the Commission’s determination that it was Sgt. Byrd’s duty, alone, to make sure that the relevant report was completed and filed. The testimony at the hearing established that Sgt. Byrd’s platoon, Platoon B, had no policy in place to determine which of the three supervisors was in charge of following up to ensure that the officers under their command completed reports. Although the testimony and evidence established that Sgt. Byrd worked October 21, 2006, and October 22, 2006, the record also reflects that Officer Adams responded to a call on October 21, 2006 and under the rule, had four days, or until October 24, 2006, to complete the report. Sgt. Miller testified that Sgt. Byrd logged some reports on October 22, 2006, and therefore he believed it was Sgt. Byrd’s responsibility to make sure all of the reports were turned in timely. However, while it was Platoon A’s policy that the sergeant who logs the report is responsible for making sure that the officer timely turns in the report, Platoon B had no policy in place to determine which of the three supervisors was responsible for ensuring that the report was turned in timely. The NOPD offered no evidence indicating that the Platoon B supervisor who logged reports in a given day is the only supervisor responsible for following up to ensure that reports are turned in timely. Indeed, Sgt. Miller admitted platoons are allowed to have different policies and that he does not know the policies of Platoon B. Sgt. Byrd testified that in Platoon B, all supervisors are responsible for insuring that reports are turned in timely.
 

 17We are cognizant that the NOPD serves as a special guardian of public safety and operates as a quasi-military institution where strict discipline is imperative. However, the NOPD still bears the burden of proving, by a preponderance of the evidence, that the complained of activity or dereliction occurred, and that such dereliction bore a real and substantial relationship to the efficient operation of the appointing authority. In this case, the NOPD failed to prove that Sgt. Byrd committed a dereliction at all, since it is unclear which sergeant, if any, solely had the duty of logging in the relevant report. There was no evidence offered at the hearing to indicate that Sgt. Byrd was the only supervisor responsible for insuring that Officer Adams’ report was turned in timely.
 

 Rather, the evidence at the hearing indicated that Platoon B had no policy in place to determine which of the three supervisors was responsible for ensuring that the report was turned in timely and that all three supervisors, and the lieutenant, shared the duty. NOPD offered no rational explanation as to why Sgt. Byrd was the only sergeant to receive a letter of reprimand. We find no rational basis for the NOPD to impose disciplinary action on Sgt. Byrd when none of the other sergeants received letters of reprimand for the same offense. Moreover, based on the testimony and evidence produced at the hearing, there is no substantial evidence to support the Commission’s decision to uphold the disciplinary action enforced upon Sgt. Byrd by the NOPD.
 
 [2]
 

 
 *976
 
 |
 
 {.Decree
 

 There was no rational basis for the decision of the Commission to uphold the discipline imposed by the NOPD in this instance, and thus, the decision of the Commission was arbitrary and capricious. Accordingly, the decision of the Commission upholding the discipline imposed by NOPD is reversed.
 

 REVERSED.
 

 [1]
 

 . Rule 4.2, Instructions from an Authoritative Source, provides, "[A] member shall professionally, promptly and fully abide by or execute instructions issued from any authoritative source... .The issuing authority shall be held responsible should any conflict materialize.” Chapter 82.2.8 provides that, “All accident reports, excluding fatalities, must be received ... within four (4) days from the dale of assignment. Supervisory personnel shall make certain all authorized delays for accident reports do not exceed this time limit." The officer's supervisor is to then determine whether or not such a delay is warranted.
 

 [2]
 

 . Sgt. Byrd also argues the Commission acted arbitrarily and capriciously in denying his appeal by finding his discipline commensurate with the alleged violation. However,
 
 *976
 
 considering our findings above, we pretermit discussion of this assignment of error.